IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACEY EAVES-VOYLES,** : | |
| : | |
| **Plaintiff,** : | Civ. No. 1:15-CV-2421 |
| : | |
| v. : | |
| : | |
| **ALMOST FAMILY, INC. d/b/a OMNI** : | |
| **HOME CARE,** : | |
| : | **Judge Sylvia H. Rambo** |
| **Defendant.** : | |

# M E M O R A N D U M

In this retaliation and wrongful termination action, Plaintiff alleges that her former employer unlawfully terminated her employment for her refusal to violate Pennsylvania nursing regulations and for reporting those violations to her employer's corporate representatives. Presently before the court is Defendant's motion to dismiss the complaint (Doc. 17), which challenges whether Plaintiff sufficiently pleaded any cause of action. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I.     Background**

   **A.     Facts[1]**

Plaintiff Tracey Eaves-Volves ("Plaintiff") was employed by OMNI Home Care ("OMNI") in Harrisburg, Pennsylvania as a Registered Nurse Clinical

---

[1] For purposes of disposition of the instant motion to dismiss, the court has carefully reviewed the complaint and exhibits attached thereto, and will, as required when deciding a motion to dismiss, accept as true all well-pleaded factual allegations and view them in the light most favorable to Plaintiff. *See infra* Part II.

Manager. (Doc. 15, ¶¶ 1, 3, 8.) OMNI is owned and operated by Almost Family, Inc., a Kentucky corporation that provides home health nursing, rehabilitation, and personal care services. (*Id.* at ¶¶ 2-3.) On July 2, 2015, Plaintiff emailed her supervisor and a regional director to express concerns regarding "OMNI's non-compliance with Pennsylvania's healthcare regulations and her unwillingness to violate the law." (*Id.* at ¶ 9.) Plaintiff believed that OMNI was accepting patients despite being unable to meet their medical needs, in violation of 28 Pa. Code § 601.31, and that accepting those patients without OMNI's staff obtaining the proper training and certification fell below the competency requirements for home care agencies and/or home care registries, in violation of 28 Pa. Code § 611.55. (*Id.* at ¶¶ 10-11.) Plaintiff also expressed concern that OMNI had asked her to schedule registered nurses without the proper medical training to perform peripherally inserted central catheter procedures, and that doing so would have violated Pennsylvania law, specifically 49 Pa. Code § 21.12. (*Id.* at ¶¶ 13-15.) Similarly, OMNI had also asked her to staff mental health nurses to non-mental health patients, despite the nurses lacking the proper medical training and certification to fulfill the needs of those patients. (*Id.* at ¶ 16.) Plaintiff was further concerned that, had she complied with OMNI's instructions, she would have personally violated Pennsylvania's Standards of Nursing Conduct. (*Id.* at ¶ 19 (citing 49 Pa. Code

2

§ 21.18).) Upon sending her email, Plaintiff intended that "her concerns would be reported in accordance with state and federal reporting requirements." (*Id.* at ¶ 12.)

After failing to promptly receive a response to her email, Plaintiff telephoned Almost Family's corporate compliance office to convey her concerns, and the director of corporate compliance informed her that her concerns were justified and that her supervisor would be tasked with ensuring OMNI's future compliance with Pennsylvania law. (*Id.* at ¶¶ 18-19.) The following day, Plaintiff's supervisor indefinitely suspended Plaintiff from her employment, (*id.* at ¶ 20), and on July 15, 2015, Plaintiff was terminated and offered a separation agreement with severance pay, which Plaintiff rejected (*id.* at ¶ 21).

### B. <u>Procedural History</u>

Plaintiff initiated this action by filing a complaint on December 16, 2015 (Doc. 1), followed by an amended complaint on March 4, 2016 (Doc. 15). In her amended complaint, Plaintiff asserts that Almost Family d/b/a OMNI ("Defendant") violated both the Patient Safety and Quality Improvement Act ("PSQIA"), 42 U.S.C. § 299b-22(e), and the Pennsylvania Whistleblower Law, 43 P.S. § 1423, by terminating her in retaliation for making a good faith report of serious wrongdoing to Defendant's representatives. (Doc. 15, Counts I & III.) Plaintiff also asserts that Defendant violated Pennsylvania public policy by

wrongfully discharging her in retaliation for her refusal to engage in conduct prohibited by law. (*Id.* at Count II.)

In response to the amended complaint, Defendant filed the instant motion to dismiss for failure to state a claim on March 18, 2016 (Doc. 17), followed by a brief in support on April 1, 2016 (Doc. 20). On April 18, 2016, Plaintiff filed her brief in opposition (Doc. 21), and Defendant replied on May 2, 2016 (Doc. 22). Thus, the motion has been fully briefed and is ripe for disposition.

## II.     Legal Standard

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For purposes of a motion to dismiss, Rule 12(b)(6) works in conjunction with Federal Rule of Civil Procedure 8, which requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded

factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *W. Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 234). When conducting this inquiry, the court considers "only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.    Discussion

Plaintiff's amended complaint asserts claims under the PSQIA, the Pennsylvania Whistleblower Law, and Pennsylvania's public policy exception to at-will employment. In the instant motion to dismiss the complaint, Defendant

argues that Plaintiff has failed to state a claim as to each count. The court will address each of Defendant's arguments in turn.

### A.     <u>Pennsylvania Whistleblower Law</u>

Count I of Plaintiff's amended complaint asserts a claim against Defendant pursuant to the Pennsylvania Whistleblower Law in which she alleges that she was wrongfully discharged from her employment in retaliation for her July 2, 2015 email and telephone reports of wrongdoing. In moving to dismiss this claim, Defendant argues, in pertinent part, that it does not qualify as a "public body" under the Whistleblower Law and therefore it cannot be subject to liability under the act. (Doc. 20, pp. 16-19.) Plaintiff argues in response that Defendant's receipt of Medicare and Medicaid funding qualifies it as a "public body" under the act. (Doc. 21, pp. 6-8.)

The Pennsylvania Whistleblower Law provides that "no employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . [who] makes a good faith report . . . to the employer or appropriate authority [of] an instance of *wrongdoing or waste by a public body* or an instance of waste by any other employer as defined in this act."[2] 43 P.S. § 1423(a) (emphasis supplied). Because Plaintiff's amended complaint alleges that Defendant committed an

---

[2] The parties cited to an older version of the statute that was in effect prior to the 2014 amendments to the Pennsylvania Whistleblower Law. The court, however, will apply the current version of the statute.

instance of "wrongdoing," rather than an instance of waste (Doc. 15 at ¶¶ 28-30), Defendant must qualify as a "public body" in order for Plaintiff's Pennsylvania Whistleblower claim to survive. A "public body" includes government officers, political authorities, and any other body which is created or "which is funded in any amount by or through Commonwealth or political subdivision authority." 43 P.S. § 1422. Whether Defendant can be considered a "public body" hinges on whether the phrase "funded in any amount by or through Commonwealth or political subdivision authority" includes Defendant's receipt of Medicare and Medicaid funding.

The Supreme Court of Pennsylvania has not interpreted the phrase "funded in any amount by or through Commonwealth or political subdivision authority" and, as a result, this court "must predict how the [Pennsylvania] Supreme Court would decide the issue currently before it." *Lampenfeld v. Pyramid Healthcare, Inc.*, Civ. No. 14-cv-0283, 2015 WL 926154, *7 (M.D. Pa. Mar. 4, 2015) (citing *City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993)). A court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l General Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quoting *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)).

Intermediate state court decisions are "particularly relevant and [should not be] 'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967)).

In support of its argument that Medicare and Medicaid funding does not qualify an employer as a "public body" under the Pennsylvania Whistleblower Law, Defendant cites to *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521 (E.D. Pa. 1991). In *Cohen*, the Eastern District of Pennsylvania predicted that the Pennsylvania Supreme Court would hold that the receipt of Medicaid payments without more is insufficient to qualify a private entity as a "public body" for purposes of the Pennsylvania Whistleblower Law. 772 F. Supp. at 1527. After considering the nature of Medicaid, the court observed that "the purpose underlying the . . . program is to extend financial benefits to the patients eligible to receive their medical care at government expense." *Id.* at 1526 (quoting *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981)). The court found that "the legislature did not intend that the mere receipt of monies from a state source[, such as Medicaid,] for services rendered should bring the recipient within the Whistleblower Law." 772 F. Supp. at 1527. The court reasoned that allowing such an expansive interpretation "would extend the reach of the Whistleblower Law to every hospital, nursing home, institution for the mentally retarded, institution for

the mentally ill, home health care provider, physician, chiropractor, podiatrist, ambulance company, dentist, and optometrist that treats patients whose medical expenses are reimbursed by Medicaid." *Id.* at 1526. Instead, the court concluded that the legislature intended the phrase "funded in any amount by or through Commonwealth or political subdivision authority" to be "limited to monies which were appropriated by the legislature for the purpose of aiding 'public bodies' in pursuit of their 'public goals.'" *Id.* at 1527.

In arguing that the receipt of such funding qualifies a private entity as a "public body," Plaintiff cites to *Denton v. Silver Stream Nursing & Rehabilitation Center*, in which the Superior Court of Pennsylvania expressly rejected the *Cohen* analysis. 739 A.2d 571, 576-77 (Pa. Super. Ct. 1999). The *Denton* court relied, in part, on the Superior Court's decision in *Riggio v. Burns*, 711 A.2d 497, 499 (Pa. Super. Ct. 1998), which held that a private medical provider qualified as a "public body" because it received funds that were annually appropriated by the state legislature. *Denton*, 739 A.2d at 576 (citing *Riggio*, 711 A.2d at 499). The *Riggio* court reasoned as follows:

> An attempt to divine the intent of the legislature by reference to the common understanding of public body is not only unnecessary, it also begs the question. Notwithstanding the everyday meaning of 'public body,' this term was expressly defined by our legislature for purposes of the Whistleblower Law. . . . The statute plainly and unequivocally makes any body 'funded in any amount by or though Commonwealth . . . authority' a public body for purposes of the Whistleblower

>Law. Where the language of a statute is unambiguous on its face, we are bound to give effect to that language.

*Id.* at 500. (citations omitted). The *Riggio* court noted, however, that *Cohen* had addressed an altogether different funding question and acknowledged that "the issue of whether Medicaid reimbursements constitute funding is not before us." *Riggio*, 711 A.2d at 499. Nonetheless, the *Denton* court expanded upon *Riggio* and found that the "statutory language differentiates between appropriated and 'pass-through' funds and extends the law to cover both types." *Denton*, 739 A.2d at 576. The court thus reasoned that the plain meaning of the Pennsylvania Whistleblower Law "clearly indicates that [the term "public body"] is intended to be applied to bodies that receive not only money appropriated *by* the Commonwealth, but also public money that passes *through* the Commonwealth." *Id.* As a result, the court found that a nursing facility that received Medicaid reimbursements qualified as a "public body" under the Pennsylvania Whistleblower Law. *Id.* at 576-77.

This court is persuaded by the reasoning and holding in *Cohen* and finds that the Supreme Court of Pennsylvania would hold that the receipt of Medicaid and Medicare reimbursements, without more, is insufficient to transform a private employer into a "public body" subject to the Pennsylvania Whistleblower Law.[3]

---

[3] To the extent that Plaintiff also alleges that Defendant qualifies as a public body due to its receipt of Medicare, rather than Medicaid, reimbursements, the court finds that the same

The phrase "funded in any amount by or through Commonwealth or political subdivision authority" most naturally refers to specific appropriations. A contrary result would unreasonably expand the scope of the Pennsylvania Whistleblower Law beyond the legislature's intent by virtue of government assistance programs meant to benefit individuals as opposed to private business entities.

Plaintiff argues in the alternative that, insofar as the court finds that Defendant does not qualify as a public body under the Whistleblower Law, Plaintiff is nonetheless entitled to the law's protections because the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 P.S. § 1303.308, extends those protections to health care workers such as Plaintiff in situations where the act may otherwise not apply. (Doc. 21, pp. 7-8.) The court disagrees.

The MCARE Act provides that "a health care worker who reports the occurrence of a serious event or incident . . . shall have the protections and remedies set forth in the . . . Whistleblower Law." 40 P.S. § 1303.308(c). A health care worker is defined as "an employee . . . authorized to provide services in a

---

reasoning applies. Medicare is a healthcare program that reimburses healthcare providers "'for the reasonable cost' of providing services to Medicare beneficiaries." *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 373 (3d Cir. 2009) (quoting 42 U.S.C. § 1395f(b)(1)). Because Medicare, like Medicaid, is intended to directly benefit qualified individuals as opposed to private providers, the court finds that the Medicaid analysis provided by the court in *Cohen* is also applicable to Medicare reimbursements.

medical facility," and a medical facility, in turn, is defined as "an ambulatory surgical facility, birth center, hospital or abortion facility." *Id.* § 1303.302.

In addressing whether the MCARE Act extends the Pennsylvania Whistleblower Law's protections to Plaintiff, the threshold issue is whether Plaintiff provided services for Defendant in a "medical facility." In her first amended complaint, Plaintiff alleges that Defendant is "a provider of home health nursing, rehabilitation and personal care services." (Doc. 15, ¶ 2.) Plaintiff has not alleged facts suggesting that Defendant operates as "an ambulatory surgical facility, birth center, hospital or abortion facility." 40 P.S. § 1303.302. Accordingly, the court finds that Plaintiff did not provide services in a medical facility while employed by Defendant and, therefore, she cannot avail herself of the MCARE Act to receive the protections of the Pennsylvania Whistleblower Law.

For the reasons provided above, Plaintiff has failed to state a claim under the Pennsylvania Whistleblower Law, and Count I will be dismissed without prejudice.

### B.    **Public Policy Exception**[4]

In Count II of her amended complaint, Plaintiff claims that she was unlawfully discharged from her employment for her refusal to violate Pennsylvania

---

[4] Because the court will dismiss Count I of Plaintiff's First Amended Complaint, Defendant's argument that Count I preempts Plaintiff's claim under the public policy exception is now moot.

12

law and that such a discharge offends clear mandates of the public policy of Pennsylvania. In moving to dismiss this claim, Defendant argues that Plaintiff's termination does not violate public policy because the nursing regulations Plaintiff relies upon do not contain provisions that, if violated, would rise to the level of a public policy exception necessary to remove Plaintiff from her at-will employment status. (Doc. 20, pp. 19-24.)

Pennsylvania adheres to the at-will employment doctrine, which allows employers to terminate employees "with or without cause, at pleasure, unless restrained by some contract." *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341 (3d Cir. 1990) (citations omitted). However, an employee may bring a cause of action for termination of an at-will employment relationship "where the termination implicates a clear mandate of public policy." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). The public policy must be expressly recognized in legislation, administrative regulations or decisions, or judicial decisions. *Murray v. Gencorp, Inc.* 979 F. Supp. 1045, 1047-48 (E.D. Pa. 1997) (quoting *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1026 (Pa. Super. Ct. 1991)). The exception is limited "to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; [or] (3) discharges an employee when specifically prohibited from doing so by

statute." *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008) (citing *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)).

Although courts will determine whether an employee's discharge violates public policy on a case-by-case basis, the Third Circuit has provided some general guidance in this regard. *Herskowitz v. Cty. of Lebanon*, Civ. No. 13-cv-0431, 2013 WL 5719250, *8 (M.D. Pa. Oct. 21, 2013) (citation omitted). Significantly, it has been held that "[a]n employee's discharge [ ] offend[s] clear mandates of public policy if the discharge result[ed] from conduct of the employee that is required by law, or from the employee's refusal to engage in conduct prohibited by law." *Id.* (citing *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir. 1993); *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir. 1990); *Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 701-02 (3d Cir. 1998)).

Here, Plaintiff alleges that Defendant terminated her after she refused Defendant's requests to schedule untrained registered nurses "to perform [] peripherally inserted central catheter [] procedures," in violation of 49 Pa. Code § 21.12, which prohibits registered nurses from performing venipuncture without "instruction and supervised practice." (Doc. 15, ¶¶ 13-15 (citing 49 Pa. Code § 21.12).) Plaintiff further alleges that Defendant's requests would have caused her to violate 49 Pa. Code § 21.18, which requires registered nurses to safeguard patients from incompetent nursing practices and prohibits them from knowingly

14

aiding, abetting, or assisting another person in violation of the nursing regulations. (*Id.* at ¶ 17.) In contrast to the cases cited by Defendant, *see Lampenfeld v. Pyramid Health Care, Inc.*, Civ. No. 14-cv-0283, 2015 WL 926154, *12 (M.D. Pa. Mar. 4, 2015); *Consolmagno v. Home Depot*, Civ. No. 06-cv-1097, 2006 WL 3524455, *1 (W.D. Pa. Dec 6, 2006); *Mikhail v. Pennsylvania Organization for Women in Early Recovery*, 63 A.3d 313, 320-21 (Pa. Super. Ct. 2013); *Spierling v. First Am. Home Health Servs Inc.*, 737 A.2d 1250, 1254 (Pa. Super. Ct. 1999), where the plaintiffs attempted to extrapolate specific duties from statutes that provided only general guidelines, the prohibition on untrained nurses practicing venipuncture is highly specific. Rather than requiring registered nurses to exercise their judgment, the regulation expressly prohibits them from practicing the procedure if they lack "instruction and supervised practice." 49 Pa. Code § 21.12(2). As such, had Plaintiff scheduled untrained nurses to perform venipunctures, she would have knowingly aided another person in violation of the nursing regulations, thereby violating 49 Pa. Code § 21.18. Because Plaintiff alleges that she was terminated from her employment in relation for her "refusal to engage in conduct prohibited by law," *Herskowitz*, 2013 WL 5719250 at *8, the court finds that Plaintiff has met her burden in showing that her termination implicated a clear mandate of Pennsylvania public policy.

Accordingly, the court finds that Plaintiff has alleged sufficient facts at this stage of the litigation to support a wrongful discharge claim under the public policy exception, and Count II will not be dismissed.

### C. Patient Safety and Quality Improvement Act

Defendant contends that Plaintiff's PSQIA claim should be dismissed because the PSQIA does not extend general whistleblower protections to medical or nursing staff and because Plaintiff failed to allege that she reported to, or intended her reports to Defendant to be forwarded to, a patient safety organization. (Doc. 20, pp. 25-28; Doc. 22, pp. 12-13.) Plaintiff argues in response that the PSQIA's plain meaning and legislative history indicate that Congress intended to create whistleblower protections for medical and nursing staff and that her claim satisfies the PSQIA's requirements. (Doc. 21, pp. 13-16.)

In determining whether the PSQIA provides whistleblower protections to medical and nursing staff, who report patient safety practices to patient safety organizations or to a provider with the intention that the information will reach a patient safety organization, the court must "begin[] with an examination of the plain language of the statute." *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir. 2001) (citations omitted). In addition, the court may consider the "'overall object and policy' of the statute." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (quoting *United States v. Schneider*, 14

F.3d 876, 879 (3d Cir. 1994)). However, "[l]egislative history may be referenced only if the statutory language . . . is ambiguous." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 259 (3d Cir. 2013).

The PSQIA protects individuals from adverse employment actions, such as a loss of employment, if "the individual in good faith reported information – (A) to the provider with the intention of having the information reported to a patient safety organization; or (B) directly to a patient safety organization." 42 U.S.C. § 299b-22(e)(1)-(2). A patient safety organization is a federally certified private or public entity tasked with the mission "to conduct activities that are to improve patient safety and the quality of health care delivery." *Id.* §§ 299b-21(4), 299b-24(a), 299b-24(b)(1)(A). The act provides that an individual who suffers an adverse employment action as a result of his or her good faith report may bring a civil action "to enjoin any act or practice that violates subsection (e) . . . and to obtain other appropriate equitable relief (including reinstatement, back pay, and restoration of benefits) to redress such violation." *Id.* § 299b-22(f)(4)(A).

Defendant argues that Plaintiff's PSQIA claim should be dismissed because "there is nothing in the text of legislative history of the [PSQIA] to suggest that it was intended to extend general whistleblower protections to medical or nursing staff." (Doc. 20, p. 26 of 30.) However, the legislative history indicates that the act was established to "foster voluntary reporting" by encouraging

17

"'providers' (e.g., physicians, nurses, hospitals, nursing homes, and other health care providers) to report information on errors, incidents of 'near misses' and enhanced health care quality practices." S. Rep. No. 108-196, at 3. To ensure a "nonpunitive environment, the bill contains 'whistle blower' protections for those reporting patient safety data" by "directly prohibit[ing] retaliation against an individual for making a report in good faith." *Id.* at 12.

Defendant also argues that the claim should be dismissed because Plaintiff failed to allege that she intended for her reports to be forwarded to a patient safety organization. While the amended complaint would have ideally included such an allegation, the complaint does allege that Plaintiff intended for concerns to "be reported in accordance with state and federal reporting requirements." (Doc. 15, ¶ 12.) Although the PSQIA establishes a voluntary rather than a mandatory reporting system, in light of the parties' burdens at the motion to dismiss stage, and granting Plaintiff all reasonable inferences, the court concludes that dismissal of Plaintiff's PSQIA claim would be premature. Plaintiff's complaint, taken as a whole, raises a plausible inference that Plaintiff intended to have Defendant forward her reports to a patient safety organization. Therefore, the court finds that Plaintiff pleaded sufficient facts to support a claim for relief under the PSQIA, and Count III will not be dismissed.

## IV.      **Conclusion**

Based on the foregoing discussion, the court finds that Plaintiff has failed to allege sufficient facts to support her claims under the Pennsylvania Whistleblower Law. Accordingly, the court will dismiss Count I of the amended complaint without prejudice and will grant Plaintiff leave to amend her complaint to provide her with an opportunity to submit an adequate pleading. The court finds that Plaintiff has alleged sufficient facts, however, to support her claims under the Patient Safety and Quality Improvement Act and for wrongful discharge under the public policy exception to the at-will employment doctrine. Therefore, Counts II and III will not be dismissed.

An appropriate order will issue.

  s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: July 27, 2016